UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL D. COE, JR.,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:15-cv-392
Beckwith, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Paul D. Coe, Jr. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 12), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 19).

**I. Procedural Background**

Plaintiff filed his applications for DIB and SSI in January 2012, alleging disability since October 30, 2011 due to physical and mental pain, drug addiction, and an inability to think clearly. Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a hearing before administrative law judge ("ALJ") Anne Shaughnessy on November 25, 2013. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On January 29, 2014, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The [plaintiff] has not engaged in substantial gainful activity since October 30, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971, *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined at 20 CFR 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes, or scaffolds; he can stoop, kneel, crouch, and crawl frequently; and he should avoid all exposure to hazards such as unprotected heights and dangerous machinery. The [plaintiff] can interact occasionally with others in a superficial manner.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1971 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[1] Plaintiff's past relevant work was as a heavy equipment operator, a small engine mechanic, and a pump servicer, all medium exertion, skilled positions. (Tr. 21, 48-49).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability as defined in the Social Security Act, from October 30, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-23).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as a merchandise marker (2,300 jobs locally, 1,806,310 jobs nationally), electronic worker (410 jobs locally, 218,740 jobs nationally), and finish inspector (520 jobs locally, 454,010 jobs nationally). (Tr. 22, 50-51).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Error**

On appeal, plaintiff raises a single issue: whether "[t]he ALJ failed to properly consider Listing 1.04[, which covers disorders of the spine,] by failing to consider all the medical evidence relevant to the listing, by failing to even address whether the listing was medically equaled, and by failing to call a medical expert for assistance in a determination of whether Listing 1.04 was met or equaled." (Doc. 12 at 1). Plaintiff argues the ALJ failed to properly consider all the relevant medical evidence related to Listing 1.04. (*Id.* at 4). Further, plaintiff contends the ALJ improperly relied on her own medical judgment instead of calling a medical expert for assistance. (*Id.* at 4, 7-8). Plaintiff argues the ALJ failed to consider whether the listing was equaled. (*Id.* at 4-5). Plaintiff contends the ALJ cherry picked from the medical record to support her own conclusion. (*Id.* at 5). Plaintiff argues that the totality of the medical record shows that he satisfied all the requirements of Listing 1.04. (*Id.* at 5-7).

The Commissioner responds that substantial evidence supports the ALJ's determination that plaintiff's condition did not meet or medically equal the requirements of Listing 1.04. (Doc.

5

18 at 3). The Commissioner cites portions of plaintiff's medical records that show he did not have consistent limitations in his range of motion, muscle strength, reflexes, or leg raising ability as required to satisfy Listing 1.04. (*Id.* at 6-8). The Commissioner contends "there was no need for a medical expert as the ALJ understood the evidence and did not require any more evidence . . . to make a determination." (*Id.* at 8).

In reply, plaintiff argues that the Court "is not free to accept [the Commissioner's] post hoc rationalization for agency action" when the ALJ did not enunciate those reasons in her decision. (Doc. 19 at 1-2).

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A claimant must satisfy all of the criteria to "meet" the listing. *Id.*; *Rabbers*, 582 F.3d at 652. However, a claimant is also disabled if his impairment is the medical equivalent of a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner*, 381 F. App'x at 488. To be the medical equivalent of a listed impairment, a claimant's impairment must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). An ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any listed

impairment. *See Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006) (upholding ALJ who "compar[ed] the medical evidence of Lawson's impairments with the requirements for listed impairments contained in the SSA regulations").

Listing 1.04 covers disorders of the spine, including degenerative disc disease. In order to meet this listing, the spinal condition "must result in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Additionally, there must be:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

*Id.* Thus, to satisfy paragraph A, plaintiff must demonstrate: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness); (4) sensory or reflex loss; and (5) positive straight leg raise test, in both the sitting and supine positions. In addition, the regulations require that abnormal findings must be established over a period of time: "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D.

Here, the ALJ found that plaintiff's degenerative disc disease did not meet or medically equal Listing 1.04. (Tr. 14-15). The ALJ concluded that plaintiff's condition did not satisfy the requirements of Listing 1.04A because consultative examining physician, Phillip Swedburg, M.D., "found no evidence of muscle weakness or atrophy, or sensory or reflex loss." (Tr. 15). Further, the ALJ noted that Ushma Patel, M.D., a specialist in physical medicine, rehabilitation, and pain medicine, "also found no evidence of muscle weakness or loss of sensation." (*Id.*). While these are the only medical findings the ALJ expressly noted in concluding that plaintiff's degenerative disc disease did not meet or medically equal Listing 1.04, elsewhere in her decision

7

the ALJ noted that Dr. Swedburg found that plaintiff ambulated with a normal gait, could bend forward and squat without difficulty, and had normal range of motion. (Tr. 18). The ALJ further noted that Dr. Patel found that straight leg raise testing was negative bilaterally. (Tr. 18-19). Moreover, the ALJ noted that while plaintiff requested a prescription for a cane in November 2012, physical examination showed "only tenderness over the lumbar spine" with no mention of significant weakness. (Tr. 19).

The medical record reveals that Dr. Swedburg, a consultative examining physician, examined plaintiff for disability purposes in March 2012. (Tr. 253-59). Plaintiff's chief complaint was that he could only stand on his feet for approximately two hours before experiencing burning pain in his feet and ankles. (Tr. 253). Plaintiff had never seen a doctor for this complaint, was not currently under the care of a physician, and took no medicine for the pain except for "an occasional over-the-counter Tylenol." (*Id.*). On physical examination, plaintiff was found to be morbidly obese, weighing 264 pounds and being 5 feet 2 inches tall. Dr. Swedburg noted that plaintiff "ambulate[d] with a normal gait without the use of ambulatory aids, and . . . was comfortable in both the sitting and supine positions." (*Id.*). Dr. Swedburg noted that "other than his weight, [plaintiff] had a completely normal, age appropriate examination." (*Id.*). Specifically, plaintiff could bend at the waist to 90 degrees without difficulty and his spine curvature was normal. (Tr. 254). Further, plaintiff could stand on either leg and squat without difficulty and there was no tenderness associated with percussion of the lumbar spinous processes. Plaintiff's straight leg raising was normal to 90 degrees bilaterally and lateral motion of the spine was normal to 30 degrees bilaterally. There was no tenderness on palpation of the hips and the range of flexion of the hips with the knees flexed was normal to 100 degrees bilaterally. There was no evidence of muscle weakness or atrophy, and all sensory modalities were well-preserved. All deep tendon reflexes were brisk. (*Id.*). Dr. Swedburg

8

diagnosed morbid obesity and opined that plaintiff appeared capable of performing a moderate to marked amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. (Tr. 255).

Plaintiff first saw Charlene Crisp, M.D., a primary care physician in June 2012. At that time, plaintiff denied any weakness in the lower extremities. (Tr. 408). Physical examination revealed mild tenderness to palpation in the lower lumbar spine and a positive straight leg raise test bilaterally at 60 degrees. (Tr. 410). Dr. Crisp assessed neuropathy, low back pain, and radicular pain of the lower extremity and ordered an electromyogram ("EMG"). Dr. Crisp prescribed Neurontin for plaintiff's pain. (Id.).

An EMG performed in July 2012 was abnormal, showing "chronic as well as early active lumbar radiculopathy, primarily at L5-S1" with L4 involvement to a lesser extent. (Tr. 444). Later that month, plaintiff told Dr. Crisp that he was "[m]uch better on the Neurontin." (Tr. 412). Physical examination revealed tenderness to palpation of the lumbar spine with mild paralumbar spasm and positive straight leg tests bilaterally at 60 degrees. (Tr. 413). Plaintiff's strength in his lower extremities was 4/5 bilaterally and he had +1 patellar deep tendon reflexes bilaterally. Dr. Crisp ordered an MRI of plaintiff's lumbar spine. (Id.).

The MRI of plaintiff's lumbar spine revealed that he "has congenital small central spinal canal with short pedicles throughout lumbar spine," which "predisposes [plaintiff] to central spinal canal and neuroforaminal stenoses." (Tr. 416). Further, the MRI revealed "bilateral neuroforamina nerve root effacement [at] L4-L5 which could cause intermitted lower extremity symptoms." (Id.). Finally, the MRI showed a small central disc protrusion at the L2-L3 level and other mild degenerative changes. (Id.).

9

On August 8, 2012, plaintiff told Dr. Crisp that Neurontin "is doing very well for symptom control." (Tr. 418). Dr. Crisp referred plaintiff to a spine and pain center for recommendations. (Tr. 419).

On August 23, 2012, Dr. Patel saw plaintiff on Dr. Crisp's referral. (Tr. 456). Dr. Patel noted that plaintiff denied any associated weakness, was ambulating without an assistive device, was independent with activities of daily living, had not had physical therapy, and had not had any spinal injections. (Id.). Dr. Patel's physical examination revealed pain in the lumbar spine associated with forward flexion to 60 degrees or extension to 20 degree past neutral. (Tr. 459). Lateral bending and rotation was restricted and painful and there was mild tenderness to palpation. In the lower extremities, there was no tenderness to palpation and no atrophy with full and painless range of motion bilaterally. Plaintiff's muscle tone was normal, his reflexes were 2+, his muscle strength was 5/5, and straight leg raise tests were negative bilaterally. Sensory exam showed no focal deficits and plaintiff's gait was normal. Dr. Patel increased plaintiff's dosage of Neurontin and started him on physical therapy. (Id.).

Plaintiff was evaluated by a physical therapist in September 2012. (Tr. 358-62). Plaintiff reported numbness, tingling, and pain in the lower extremities down to the bottom of his feet. (Tr. 358). On examination, straight leg raise tests were positive bilaterally. (Tr. 359). Impairments identified included range of motion, balance, weakness, pain, and flexibility. (Tr. 360). Plaintiff attended physical therapy through November 1, 2012. (Tr. 288-372). His exercise regimen included range of motion exercises and electric stimulation. (Id.). Plaintiff was discharged from physical therapy to a home exercise program in November 2012 because his progress had plateaued. (Tr. 289-90). The therapist reported, "Patient has not responded well to treatment this interval and has actually demonstrated worsening strength and score on outcomes scale score since initial evaluation." (Tr. 293).

10

On November 2, 2012, plaintiff told Dr. Crisp that Neurontin "was helping well, but the efficacy has diminished somewhat." (Tr. 421). He requested a cane because his left leg was giving out and he was falling. (*Id.*). On examination, Dr. Crisp found tenderness to palpation over the lumbar spine, 4+/5 strength in the right leg, and 4/5 strength in the left leg. (Tr. 422). Dr. Crisp increased plaintiff's dosage of Neurontin. (*Id.*). On November 30, 2012, Dr. Crisp did not note any abnormal musculoskeletal findings on physical examination. (Tr. 426).

In February 2013, plaintiff told Dr. Crisp that Neurontin "does well for lumbar radiculopathy." (Tr. 428). Physical examination revealed no tenderness over the lumbar spine. (Tr. 429).

Plaintiff saw nurse practitioner Jennifer Glockner in August and September 2013. (Tr. 432-441). Physical examination revealed shoulder pain, but no findings related to the lumbar spine. (Tr. 434, 440).

Based on this medical record, substantial evidence supports the ALJ's conclusion that plaintiff's condition did not meet or medically equal Listing 1.04. To meet the relevant prong of Listing 1.04, plaintiff's condition must be characterized by "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A. The ALJ's primary reason for finding that plaintiff did not satisfy the requirements of this listing was that Dr. Swedburg and Dr. Patel found no evidence of muscle weakness accompanied by sensory or reflex loss. (*See* Tr. 15).

The medical record supports the ALJ's conclusion that plaintiff failed to satisfy the motor loss requirement of Listing 1.04. In March 2012, Dr. Swedburg noted that there was no evidence of muscle weakness or atrophy, all sensory modalities were well-preserved, and all deep tendon

11

reflexes were brisk. (Tr. 254). Likewise, in August 2012, Dr. Patel noted there was no atrophy in plaintiff's leg muscles, his muscle tone was normal, his reflexes were 2+ (i.e., normal), his muscle strength was 5/5, and sensory exam showed no focal deficits. (Tr. 459). Furthermore, although not cited by the ALJ, Dr. Crisp noted in June 2012 that plaintiff denied any weakness in his legs. Dr. Crisp noted only mild weakness in plaintiff's legs in July (4/5 strength bilaterally with 1+ patellar reflexes) and November 2012 (4+/5 strength in the right leg and 4/5 strength in the left leg). Plaintiff's physical therapist also noted mild muscle weakness of 4/5 and 4+/5 in plaintiff's legs in November 2012. (Tr. 289). *See also Ellison v. Comm'r of Soc. Sec.*, No. 5:12-cv-1941, 2013 WL 4050964, at *10 (N.D. Ohio Aug. 9, 2013) (including 4/5 strength in right leg in list of medical findings characterized as "unremarkable"); *Olah-Lapash v. Comm'r of Soc. Sec.*, No. 1:10-cv-1287, 2011 WL 3843698, at *7 (N.D. Ohio Aug. 4, 2011) (finding that despite plaintiff's decreased sensation and complaints of weakness, muscle strength of 4/5 was consistent with ALJ's finding that plaintiff was capable of performing light work). No muscle weakness, sensory loss, or reflex loss was noted by Dr. Crisp in a February 2013 examination or by nurse practitioner Glockner in August and September 2013 examinations. (Tr. 413, 434, 440). While the medical evidence of record indicates that plaintiff intermittently showed some of the symptoms necessary to fulfill the requirements of Listing 1.04A during the relevant period, the evidence does not establish the presence of each requirement over a period of time. *See* Listing 1.00D. Thus, substantial evidence in the medical record supports the ALJ's finding that plaintiff did not have significant muscle weakness. Further, substantial evidence supports the ALJ's finding that plaintiff did not have significant reflex loss as both Dr. Swedburg and Dr. Patel noted normal reflexes. Thus, plaintiff has failed to satisfy the motor loss criterion of Listing 1.04A.

To the extent plaintiff contends the ALJ erred by failing to find his impairments were equivalent in severity to Listing 1.04A, plaintiff bears the burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in the original). *See also* 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. Social Security regulations further provide that medical equivalence "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1526(b), 416.926(b).

In the instant case, plaintiff fails to present evidence or argument showing how his combination of impairments equals all of the requirements of Listing 1.04A. Plaintiff cannot rely on the "overall functional impact of his unlisted impairment or combination of impairments" to satisfy equivalence to a listing. *Zebley*, 493 U.S. at 531. Substantial evidence supports the ALJ's conclusion that plaintiff's impairments do not equal Listing 1.04A and the ALJ's decision in this regard should be affirmed.

Further, the ALJ was not required to consult a medical expert before determining that plaintiff's condition did not meet or medically equal Listing 1.04. "The primary function of a medical expert is to explain in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases." *Cunningham v. Comm'r of Soc. Sec.*, No. 1:13-cv-561, 2015 WL 4514540, at *7 (S.D. Ohio Jul. 24, 2015) (citing *Richardson v. Perales*, 402 U.S. 389, 408 (1971)). An ALJ may "ask for and

consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in [the listing of impairments]." 20 C.F.R. §§ 404.1527(e)(2)(iii) and 416.927(e)(2)(iii). "An ALJ's decision whether a medical expert is necessary, however, is inherently discretionary. There is no mandate requiring an ALJ to solicit such evidence." *Cunningham*, 2015 WL 4514540, at *7 (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) ("20 C.F.R. §§ 404.1527([e])(2)(iii) and 416.927([e])(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony. . . .")).

There is no showing in this case that the use of a medical expert was necessary. As explained above, the ALJ accurately relied on substantial evidence in the medical record to find that plaintiff did not satisfy the motor loss criterion of Listing 1.04A. Thus, because the medical evidence on this point was clear, a medical consultant was not necessary for the ALJ to determine that plaintiff did not meet or medically equal Listing 1.04. Accordingly, plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **AFFIRMED**.

Date: 5/10/16

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL D. COE, JR.,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-392
Beckwith, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).